**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0881n.06
Filed: November 3, 2005

No. 04-3685

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

TAZE VUSHAJ,                              )
                                         )
    **Petitioner-Appellee,**              )
                                         )
v.                                        )          **ON APPEAL** FROM THE
                                         )          BOARD   OF   IMMIGRATION
ALBERTO R. GONZALES,                      )          APPEALS
ATTORNEY GENERAL                          )
                                         )
    **Respondent-Appellant.**            )
                                         )
_____ )


**Before: ROGERS and SUTTON, Circuit Judges; and FORESTER,**[*] **District Judge.**

    **KARL FORESTER, Senior District Judge.** This is an appeal from the Board of Immigration Appeals' ("BIA") denial of petitioner's claims for asylum and withholding of removal. The petitioner also appeals the BIA's disposition of her case by summary affirmance without an opinion. For the reasons set forth below, we DENY the petition for review.

**I.**

**A. Procedural Posture**

_____

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

The petitioner, Taze Vushaj, is an Albanian citizen. Vushaj was a member of the Albanian Democratic Party. The Democratic Party is part of Albania's parliamentary government. The Democratic Party was often in opposition to the Socialist Party, the majority party in Albania. It was Vushaj's membership in this organization that formed the basis for her application.

Vushaj entered the United States on June 15, 1998. She was placed in removal proceedings by the Immigration and Naturalization Service ("INS") (now part of the Department of Homeland Security) and charged with a violation of Sec. 237 (a)(1)(A) of the Immigration and Nationality Act. At her master calendar hearing, she admitted the factual allegations contained in the Notice to Appear, and conceded removability. Vushaj filed an application for asylum, withholding of removal under Sec. 241(b)(3) of the Immigration and Nationality Act or withholding under the Convention Against Torture. Vushaj alleges that she suffered persecution, including being confined, assaulted, and raped by secret police, because of her affiliation with the Albanian Democratic Party.

The asylum officer recommended that Vushaj was ineligible for asylum, and referred her case to the Immigration Court for removal proceedings. After an initial hearing in the New York Immigration Court, her case was transferred to Detroit, where she had moved.

**B.      Petitioner's Factual Allegations**

Vushaj testified that she came from a family of political activists. They joined the Democratic Party in 1991, after communism formally ended in Albania. Her father was imprisoned for dissident activities during the communist regime. Vushaj became a member of the Democratic Party as a teenager.

2

When Vushaj's family moved to Tirana from a small village in 1995, she accepted a job working for Democratic Party chairman, Tritan Shehu. In either 1997 or 1998, she left this post. The immigration judge questioned Vushaj about the reason she left this job. In Vushaj's amended asylum application, she stated that she was seeking asylum in part because of a confrontation that occurred in Tirana on June 15, 1997 while she was handing out leaflets for the upcoming election. Her statements were inconsistent as to whether the attackers were secret police or Socialist Party supporters, and as to whether Vushaj was beaten during the confrontation, or merely harassed. Vushaj testified that after the attack, Mr. Shehu counseled her that she should leave the party for her own safety. Vushaj asserted in her asylum application that this confrontation was the reason she left her job. She testified before the immigration judge, however, that she left her office job with the party because party leaders wanted her to work more hours and "be on the streets" supporting the party more than she had been in the past.

Both the asylum officer and the immigration judge questioned Vushaj closely about the leadership and workings of the Democratic Party in Albania during the years when Vushaj allegedly worked for Shehu. Both noted that Vushaj did not have an accurate knowledge about these matters.

Vushaj testified that her father is deceased. She stated in the asylum interview that her father had been shot in 1997, possibly because of political motivations. She testified at her removal hearing, however, that her father died in some type of mountain accident in 2000. Vushaj's cousin, Martin Vushaj, testified that he was not sure whether or when Vushaj's father died. When the immigration judge asked him whether the father was shot in 1997, Martin said that this sounded correct.

3

Vushaj testified that in May 1998, she was seized by the Albanian secret police and detained at a police station for three days, where she was interrogated, beaten, and raped. Vushaj testified that she was at home with her mother and father when people who announced themselves as the secret police arrived and arrested her. The police beat up her parents. After a twenty-minute drive, the two officers took Vushaj into a police station. They interrogated her, asking her questions about her knowledge of the Democratic Party. She testified that the two beat her and caused bruises all over her body and put her head in a plastic bag. After this, they raped her. She testified that she lost consciousness either at this point or shortly after the rape. Sometime later, the two officers forced her to sign a letter saying that she would go against the Democratic Party. Vushaj testified that these events took place over the course of two days, but she gave varying accounts of which events happened on which day. Vushaj noted in a supplementary affidavit, submitted before her removal hearing, that victims of rape are treated with extreme disrespect in Albania. The immigration judge questioned Vushaj closely about the rape, but Vushaj provided few details.

One month after this incident, Vushaj left Albania, stopping in Italy and eventually arriving in New York. She did not seek a visa to enter the United States when she left Albania in June 1998, she testified, because the Socialist Party was in power at the time, and they did not want to let members of the Democratic Party out of the country. Vushaj admitted that she presented a false Italian passport to customs; however, she carried her actual Albanian passport with her. Vushaj moved from New York to Detroit while her removal proceedings were pending.

In January 1999, Vushaj gave birth to a son, whose father is listed on the birth certificate as Pretash Vukaj, a citizen of Albania. Vushaj testified before the Immigration Judge that the person listed as father on her son's birth certificate is not the father; in fact, Vushaj became pregnant when

4

she was raped by security officers in Albania in May 1998. Vushaj testified that Vukaj is her boyfriend, but he is actually Yugoslavian, rather than Albanian. Vushaj claims that she met Vukaj after she arrived in the United States. She testified that she put his name on the birth certificate because she did not know the father's name.

On September 23, 1998, Vushaj submitted an application for asylum, and an asylum officer interviewed her on November 4, 1998. The officer found Vushaj not to be believable, because of her statements on three subjects. First, Vushaj gave conflicting accounts concerning an altercation that happened while Vushaj was distributing campaign leaflets in June 1997. While she alleged in her asylum interview that the people who accosted her at the rally were members of SHIKU, the Albanian secret police, she had stated in her interview that the attackers were merely "supporters of the opposition" (the Socialist Party). Further, Vushaj stated in her interview that these people only scattered the leaflets around her and threatened her, whereas in her asylum application, she alleged that they "beat and kicked" her. Second, Vushaj stated in her asylum interview that her father had been killed in 1997; in her application she did not mention his death. Third, the asylum officer noted that Vushaj did not know basic facts about the Democratic Party in Albania, which led the officer to doubt whether Vushaj had actually worked for the chairman. For example, she could not name the people who held high posts in the party during the years she worked there, and she incorrectly answered how many parliamentary seats the Democratic Party won in the 1997 elections.

Hearings on Vushaj's asylum application occurred on January 19, 2001 and October 25 and November 27, 2002. The immigration judge denied asylum, resting his decision entirely on an adverse credibility determination. He noted that if Vushaj had been credible, then her allegations

5

of politically motivated rape would merit a grant of asylum. The BIA affirmed without opinion on May 6, 2004. This timely petition for review followed.

## II.

### A.     Standard of Review

Because the BIA affirmed without opinion, this court directly reviews the decision of the immigration judge. *See Denko v. INS,* 351 F.3d 717, 730 (6th Cir. 2003). The immigration judge's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2001).

Our standard for reviewing the immigration judge's factual findings is deferential: factual findings are conclusive, unless we determine that the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias,* 502 U.S. 478, 484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Questions of law are, as usual, reviewed *de novo. Ashki v. INS,* 233 F.3d 913, 917 (6th Cir.2000).

### B.     Substantial Evidence Supported the Adverse Credibility Determination.

An applicant may obtain asylum under Section 208(a) of the Immigration and Nationality Act if she shows that she is a "refugee," meaning that she is unwilling or unable to return to her home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The applicant must establish, through substantial evidence, that she has both a subjective and objective fear of persecution. *Ivezaj v. I.N.S.,* 84 F.3d 215, 221 (6th Cir.1996). If an applicant establishes past persecution, a presumption of future persecution arises under 8 C.F.R. § 208.13, which the Government may rebut by showing changed country conditions.

6

As to Vushaj's claims of past persecution, the immigration judge found that she was not credible based on certain inconsistencies and omissions. In reviewing credibility findings, we consider that:

> "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Sylla v. INS,* 388 F.3d 924, 926 (6th Cir.2004). Findings of non-credibility cannot be based upon irrelevant inconsistencies in the evidence presented to an Immigration Judge. *Daneshvar v. Ashcroft,* 355 F.3d 615, 619 n.2 (6th Cir.2004). If presented discrepancies cannot be viewed as attempts by the applicant to enhance his claim of persecution, they have no bearing on credibility. *Id.* at 623. (citation and quotation omitted).

*Mece,* 415 F.3d at 576 (quoting *Bibashani v. Ashcroft,* 124 Fed. Appx. 361, 365 (6th Cir.2005) (unpublished)). "Like affirmative inconsistencies, omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum claim." *Liti v. Gonzales,* 411 F.3d 631, 637 (6th Cir.2005). Furthermore, "[w]hile an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons." *Sylla,* 388 F.3d at 926. Therefore, our task is to review the adverse credibility findings that were adopted by the BIA and determine whether the underlying basis for these findings was sufficient.

The immigration judge noted several specific problems with Vushaj's testimony which contributed to the ultimate adverse credibility finding. Specifically, the judge found four inconsistencies.

First, the immigration judge found the paternity of Vushaj's son "was an issue of dire importance," and Vushaj did not testify credibly or provide any documentation to prove that the person listed on the birth certificate was not actually her son's father. The immigration judge made a finding of fact that Vukaj, the person listed as father on the baby's birth certificate, was actually the baby's father, despite Vushaj's assertions to the contrary. Vushaj introduced this as an issue by

7

asserting that the birth certificate was false. Since adverse credibility findings must be based on issues that go to the heart of the applicant's claim, *see Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004), the immigration judge's decision would probably not be supported by substantial evidence if he had relied only on the inconsistencies of Vushaj's statements regarding the father of her son.

Second, it was completely unclear to the immigration judge how or whether Vushaj's father had died. Vushaj did not check a box in her original asylum application indicating that her father was deceased; the immigration judge amended the application to include this at the time of Vushaj's removal hearing. The immigration judge found it was impossible to reconcile Vushaj's statement in her asylum interview that her father was shot in 1997, with her subsequent testimony in the removal hearing that he died in a mountain accident in 2000. Vushaj explained the discrepancy by saying that the interpreter must have misunderstood her at her asylum interview; however, Vushaj's cousin Martin, who testified at her removal hearing, actually confirmed the first story of the father's death, not the second. The immigration judge correctly concluded that this was an important issue, and that Vushaj was not at all credible with respect to it.

Third, the immigration judge found the discrepancies in Vushaj's account "raise a serious question about . . . whether or not she ever worked for Mr. Shehu [the Democratic Party leader] in any event." The immigration judge noted that Vushaj testified inconsistently concerning her confrontation with political opponents while she was handing out leaflets in preparation for upcoming elections in 1997. It was unclear both whether Vushaj was physically attacked and, if so, whether the attackers were connected with the government. More importantly, the immigration judge noted, Vushaj gave conflicting accounts concerning the reason she left her post at the Democratic Party. The questions of whether Vushaj actually was an employee of the party, and

8

whether she actually did suffer a physical attack as a result of this work, go to the heart of her asylum application, and the immigration judge properly found that these inconsistencies greatly damaged her credibility.

Finally, the immigration judge found that Vushaj was not credible in her description of being confined and raped. He noted that Vushaj claimed in her asylum application that she was sodomized, but she could never articulate any activity that could be associated with being sodomized. The immigration judge also noted that Vushaj's asylum application stated that she was raped on the second day she was confined, while she testified that the rape happened on the first day of confinement. The immigration judge correctly found that Vushaj failed to provide a coherent or credible account of the incident, despite the immigration judge's close questioning While some vagueness would be understandable given the traumatic nature of the incident, we cannot conclude, as the standard of review requires, that any reasonable factfinder would be compelled to find Vushaj to be the victim of a politically motivated rape.

Because substantial evidence supported the immigration judge's adverse credibility finding, Vushaj's petition to vacate the BIA's decision is DENIED.

## C. The BIA Properly Employed the Streamlining Procedure.

The BIA affirmed the immigration judge without opinion pursuant to the BIA's authority to streamline cases under 8 C.F.R. § 1003.1(e)(4)(I). On appeal, Vushaj argues that the BIA "improperly invoked the decision to summarily affirm without opinion given that the decision of the Immigration Judge was blatantly incorrect, given that the errors in the Immigration judge's decision were harmful and material, that the Immigration judge disregarded and distorted the evidence, and that the Immigration judge misapplied the law." Petitioner's Br. at 13.

9

One Board member may affirm without an opinion where (1) the immigration judge's decision was correct and any errors were harmless; and either (2) the issues on appeal are squarely controlled by precedent and do not involve novel legal or factual situations, or (3) the factual and legal issues on appeal are not so substantial that the case warrants the issuance of a written opinion. 8 C.F.R. § 1003.1(e)(4)(I). This court has concluded that, on its face, streamlining does not deny due process. *Denko v. INS,* 351 F.3d 717, 730 (6th Cir. 2003).

Whether an alien may challenge the BIA's use of its streamlining procedure pursuant to the Administrative Procedure Act ("APA") remains an open question before this court. *See Denko,* 351 F.3d at 732 ("Assuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance...."); *Vasha v. Gonzales*, 410 F.3d 863 (6th Cir. 2005). Vushaj argues that the case should have been reviewed by a three-member panel of the BIA because the immigration judge made a clearly erroneous factual determination, thereby satisfying § 1003.1(e)(6)(v). As we concluded above, substantial evidence in the record supports the immigration judge's adverse credibility determination, and therefore Vushaj has failed to demonstrate that the immigration judge made a clearly erroneous factual determination as to whether Vushaj suffered past persecution or a well-founded fear of future persecution should she return to Albania. *See Vasha,* 410 F.3d at 876. Assuming without deciding that judicial review of the BIA's case-management system is appropriate, we conclude that Vushaj has failed to demonstrate that her case should have been reviewed by a three-member panel of the BIA.

**III.**

For the foregoing reasons, we conclude that none of the arguments presented in the

10

petition are persuasive, and therefore, we DENY Vushaj's petition for review.