NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0419n.06
Filed: June 22, 2006

Case No. 04-4349

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| SHKELQIM KOMI and ALMA KOMI, | ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM AN ORDER OF THE |
| v. | ) ) | BOARD OF IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, Attorney General of the United States of America, | ) ) ) ) | |
| Respondent. | ) ) ) | |

---

**BEFORE: BATCHELDER and GRIFFIN, Circuit Judges; ZATKOFF, District Judge.**[*]

**Lawrence P. Zatkoff, District Judge**. On May 14, 2004, the Immigration Judge denied Petitioners' motion to reopen their application for asylum. On October 21, 2004, the Board of Immigration Appeals ("the BIA") summarily affirmed the denial. The instant Petition for Review to this Court followed. For the following reasons, we **DENY** the Petition for Review.

## I. BACKGROUND

Petitioners, a married couple aged 34 and 30, are natives of Albania. They allege that they entered the United States illegally in July 2001, in Detroit, Michigan. On November 3, 2001, Petitioners filed an application for asylum. The application stated that Petitioner Shkelqim's father

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

had attempted to escape from Albania in 1950, and the family had been subsequently persecuted by the government. Petitioner also claimed to have been involved in anti-communist activities since the early 1990s. Petitioner claimed to have been detained and beaten by police twice in 1990 and 1991. Petitioner claimed to have been an election observer in 1996 and 1997, and to have been beaten in connection with those activities. Petitioner claimed that he continued his political activity from 1997 until 2001, and was detained and beaten several times. Petitioner also claimed his wife was beaten and raped because of his political activity in June 2001. Petitioners allege they left Albania for the United States in July 2001.

Petitioners' application for asylum was referred to an Immigration Judge. The Immigration and Naturalization Service instituted removal proceedings on December 26, 2001, by serving Petitioners with a notice to appear. The Immigration Judge held hearings on Petitioners' case in May and June 2002. On November 19, 2003, the Immigration Judge issued an order denying Petitioners' application for asylum. The Immigration Judge held that Petitioners' testimony was inconsistent and not fully credible. J.A. 97-100.

Petitioner Alma alleges she learned the application was denied when she called a court telephone number on or about December 26, 2003. Petitioners' attorney claims he did not receive a copy of the decision until January 5, 2004, when he went to the Immigration Court to obtain a copy. Petitioners filed an appeal with the BIA on January 23, 2004. On March 31, 2004, the BIA denied Petitioners' appeal as untimely, because it was not filed within thirty days of the Immigration Judge's decision. J.A. 58. The BIA acknowledged Petitioners' attorney's claim that he did not receive the decision. However, the BIA noted that the record contained a cover letter showing the decision was mailed to the correct address, and there was no returned mail in the record. The BIA

held that Petitioners' attorney's affidavit was an insufficient basis to accept the untimely appeal. J.A. 58. Petitioners did not seek review of the March 31, 2004, decision in this Court.

On April 26, 2004, Petitioners filed a motion to reopen with the Immigration Judge. Petitioners argued that they received ineffective assistance of counsel because their attorney failed to inform them of the original decision and the deadline for appeals. On May 14, 2004, the Immigration Judge denied Petitioners' motion to reopen. Petitioners appealed the decision to the BIA. On October 21, 2004, the BIA summarily denied the appeal, without issuing a separate opinion. The petition to this Court followed.

## II. ANALYSIS

Petitioners argue that the denial of their motion to reopen should be reversed for two reasons: the denial was an abuse of discretion, and violated Petitioners' due process rights.

### A. Abuse of Discretion

This Court has held that when "determining whether the [BIA] abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (citation omitted). The Supreme Court has held that motions to reopen in immigration proceedings are disfavored, and that the Attorney General has "broad discretion" to deny such motions. *INS v. Doherty*, 502 U.S. 314, 323 (1992). This standard is applied "regardless of the underlying basis of the alien's request [for relief]." *Id.* (citation omitted).

Petitioners note that the Immigration Judge's decision denying the motion to reopen merely found that Petitioners' attorney was served by mail with the earlier decision, and did not address

3

Petitioners' claims of ineffective assistance of counsel. Petitioners argue that the Immigration Judge did not inform them of the appellate procedures during the initial hearing, and the written decision was delayed almost seventeen months. In addition, the decision was delivered by regular, not certified mail.

By any account, the Immigration Judge's order was considerably terse. The order, in its entirety, reads as follows: "The record reflects that respondent's counsel was served by mail and a cover sheet reflecting service is contained in the file. See attached." J.A. 13. This Court has held that "[c]ursory, summary, or conclusory statements are inadequate." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). However, the order must be evaluated in the context of the arguments made in the motion.

The BIA requires motions to reopen based on ineffective assistance of counsel claims to meet the *Lozada* requirements. *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1998). This Court has noted that:

> Briefly, the *Lozada* requirements are (1) that the motion be supported by an affidavit detailing counsel's failings, (2) that counsel be informed of the allegations, and (3) that the motion show that disciplinary charges have been filed with the appropriate authority.

*Sako*, 434 F.3d at 863 (citations omitted). However, "[t]he failure to file a complaint is 'not fatal' if a petitioner provides a 'reasonable explanation' for his decision." *Sene v. Gonzales*, Nos. 04-3794, 04-4115, 2006 U.S. App. LEXIS 4270, *6 (6th Cir. 2006). Petitioners' motion did not contain an affidavit detailing counsel's failings; rather, the motion contained an affidavit from Petitioners' counsel stating that he had not failed them at all. The motion also contained a statement that no charges had been filed with the appropriate authority.

Petitioners argue that the facts of this case do not require strict compliance with the *Lozada*

4

requirements. First, Petitioners claim that disciplinary charges need not be filed when the record reflects a *prima facie* case of ineffective assistance of counsel. However, this Court has considered and rejected that exact argument: "Although [the petitioner] argues that strict compliance with the *Lozada* requirements should not be required if ineffective assistance is apparent from the record, we have not adopted this approach." *Sene*, 2006 U.S. App. LEXIS 4270 at *6.

Petitioners' second, and primary, argument is that although the record reflects a *prima facie* case of ineffective assistance of counsel, counsel was in fact not at fault. Instead of filing an affidavit detailing their counsel's ineffective assistance, Petitioners filed an affidavit by their counsel stating that he was not ineffective. J.A. 56. In their petition to this Court, Petitioners note that their motion to reopen "was based on the assertion by Petitioners' counsel that he had not received the decision of the Immigration Judge within the 30-day period following the date of the decision, and had thus missed the normal filing deadline." Pet. Brief at 4. Later in the brief, Petitioners' counsel states that: "However, it strikes me as unseemly that I should file a complaint against myself when I have done nothing wrong. Why should I send my clients to another attorney so we can play out some charade of complying with the complaint requirements? My clients have no complaint." Pet. Brief at 22.

Petitioners' attorney is using an ineffective assistance of counsel claim as a procedural mechanism to attack the BIA's refusal to allow the untimely appeal, while at the same time stridently denying that there has been ineffective assistance of counsel. The real argument is that, based on the way the Immigration Judge issued the decision, the BIA should have accepted the untimely appeal. Petitioners' argument that they had no choice but to then file the motion to reopen is incorrect. Petitioners could have appealed the BIA's refusal to accept the appeal to this Court.

5

*See Malak v. Gonzales*, 419 F.3d 533 (6th Cir. 2005). Instead, Petitioners filed the motion to reopen, which, while ostensibly based on ineffective assistance of counsel, really challenged the BIA's refusal to accept the appeal.

These circumstances do not warrant the waiving of the *Lozada* requirements. In fact, accepting Petitioners' argument would completely eviscerate the requirements. This Court has held that "[s]ound policy reasons support compliance with the *Lozada* requirements. The requirements facilitate a more thorough evaluation by the BIA and 'discourage baseless allegations.'" *Hamid v. Ashcroft*, 336 F.3d 465, 469 (6th Cir. 2003) (citation omitted). Petitioners argue that they should be allowed to bring an ineffective assistance of counsel claim that they essentially admit has no basis in fact. This would defeat the purpose of the *Lozada* requirements. The Third Circuit addressed a similar issue in *Georcely v. Ashcroft*, 375 F.3d 45 (3d Cir. 2004). The Third Circuit affirmed the denial of the petitioner's motion to reopen based on ineffective assistance of counsel, noting that:

> [I]f freely indulged, ineffective assistance claims would undermine the stringent requirements of section 1229a(b)(5)(C) (and much else in the statute besides) so the BIA has insisted that the alien has to comply with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). These include the filing of a bar complaint against counsel or adequately explaining why the complaint has not been filed.
>
> * * *
>
> The present case is a perfect example. A claim of inadequate representation has not been squarely made either before the [BIA] or on this appeal. Counsel has sought to make his own carelessness, if that is the proper characterization, an excuse for Georcely's failure to appear, while never conceding that his own conduct as counsel was ineffective representation--a standard that requires a showing of significant incompetence and a likely adverse effect on the ultimate outcome.

*Id.* at 51.

In the instant case, Petitioners' motion to reopen was essentially a challenge to the BIA's

6

decision to not accept the untimely appeal. However, Petitioner did not provide any new evidence supporting that motion. The Immigration Judge's terse order was an affirmation of the BIA's previous decision. In that context, a more lengthy and detailed opinion was not necessary. Thus, it cannot be said that the decision was without "a rational explanation." The Immigration Judge did provide an explanation: the motion to reopen was denied on the same basis that the earlier appeal to the BIA was denied, namely, that there were insufficient grounds to allow the untimely appeal.

Furthermore, even if Petitioners' ineffective assistance of counsel claim had met the *Lozada* requirements, they would still be required to show prejudice. The loss of the right to appeal is not sufficient prejudice; Petitioners must show that, but for their counsel's ineffective assistance, they would have been allowed to remain in the country. *See Sako*, 434 F.3d at 865.

The Immigration Judge's decision to deny Petitioners asylum was based on two grounds: untimely application, and the merits of the application. Regarding the untimeliness of the application, the Immigration Judge held that Petitioners had not demonstrated by clear and convincing evidence that they applied for asylum within one year of arrival. Petitioners filed for asylum in November 2001, and claimed they arrived in the United States on July 20, 2001. The Immigration Judge held that:

> Respondent has failed to submit clear and convincing evidence establishing the date, time and place of admission. Respondent has submitted no corroborative evidence of the date of his departure from Albania, the date of his arrival into Zurich, Switzerland or into Toronto, Ontario, Canada. Respondent claims that he traveled through these countries prior to securing entry into the United States. When questioned by the Court as to the possible presentation of objective, corroborative evidence, such as, boarding passes, ticket receipts, hotel or taxi receipts, Respondent initially claimed that these items were returned to the smuggler who had provided the false passports. When the Court expressed surprise that these items were considered critical by a smuggler, Respondent then claimed that the items were misplaced.

7

Respondent apparently remained in Canada with a friend for a period of time prior to securing his illicit entry. No affidavit of the dates of presence in Canada has been submitted. Respondent has further failed to submit evidence to establish that his failure to file an application for asylum was due to extraordinary circumstances of changed circumstances in the country from which asylum is sought.

J.A. 89.

The Immigration Judge further held that the application would be denied even if it were deemed timely. The Immigration Judge held that:

In the instant case, I have considered the rationality, internal consistency and inherent persuasiveness of the respondent's testimony in reaching my conclusion with regard to the respondent's credibility. The respondent's testimony and his applications for asylum are inconsistent and the inconsistencies are critical. Moreover, the respondent's testimony omits events and details of his claims of persecution set forth in the application. The respondent has failed to provide a convincing explanation for these discrepancies and omissions.

J.A. 97.

The Immigration Judge noted that there were inconsistencies between Petitioner Shkelqim's testimony and application regarding the number of times he was arrested and beaten. There was also an inconsistency regarding the date of an alleged assassination attempt. The Immigration Judge noted that an article submitted by Petitioners regarding Petitioner Shkelqim's arrest appeared to be in a different type and setting than the rest of the paper. The Immigration Judge stated that "[t]he profile of asylum claims and country conditions from May of 2001, Exhibit 23, note that the newspapers in Albania have been known to publish articles for the purpose of bolstering asylum claims for individuals. The paper submitted bears the indicia of such publication." J.A. 98. The Immigration Judge also noted inconsistencies regarding the treatment of Petitioner Alma after the alleged rape, and Petitioners' preparation for departure. Petitioners claimed they decided to leave after an assassination attempt on Petitioner Shkelqim on June 20, 2001, and the rape of Petitioner

8

Alma on June 26, 2001. However, the withdrawal of funds to pay the smuggler took place on June 17, 2001. The Immigration Judge held that Petitioners were not credible, and their asylum claim failed for lack of proof. J.A. 99.

Regarding the timeliness of their application for asylum, Petitioners note that the Chicago Asylum Office determined Petitioners' application was timely before referring the matter to the Immigration Judge. Petitioners argue that the Immigration Judge should have referred to the Asylum Officer's notes before making her decision. However, Petitioners have not provided any evidence showing that their application was timely.

Petitioners also claim that the Immigration Judge's credibility determination would have been a substantial issue on appeal. An Immigration Judge's credibility determinations are treated as findings of fact, and are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005) (citation omitted). Credibility findings are given substantial deference, but "must be supported by specific reasons." *Id.* Inconsistencies and omissions can support an adverse credibility finding, but they must relate to "issues that go to the heart of the applicant's claim." *Id.*

In the instant case, the Immigration Judge provided specific examples of inconsistencies and omissions relating to the heart of Petitioners' claim: the persecution they allegedly suffered in Albania. This Court considered a similar case in *Vushaj v. Gonzales*, 152 Fed. Appx. 511 (6th Cir. 2005). The petitioner, an Albanian citizen, claimed that her father had been imprisoned for dissident activities during the communist regime. The petitioner claimed she had been persecuted for her activities with the Albanian Democratic Party. Petitioner specifically claimed that she had been beaten and raped. The Immigration Judge determined the petitioner was not credible, and denied

9

her application.  This Court affirmed, noting four inconsistencies the Immigration Judge had identified.  *Id.* at 515-16.

Similarly, the Immigration Judge in the instant case identified several inconsistencies between Petitioners' application and testimony.  Petitioners argue the Immigration Judge's credibility finding would have been a substantial issue on appeal.  However, as discussed above, the loss of the right to appeal is not sufficient prejudice in and of itself.  Petitioners must show that they would have prevailed on appeal.  Petitioners have not made a showing sufficient to reverse the Immigration Judge's credibility determination.  Thus, they have not shown prejudice.

Since Petitioners have not complied with the *Lozada* requirements, and have not demonstrated prejudice, the decisions of the Immigration Judge and BIA must be upheld.

**B.  Due Process**

Petitioners argue that their due process rights were violated in two ways: the denial of their right to appeal the initial decision of the Immigration Judge, and the failure of the Immigration Judge and the BIA to consider their motion to reopen in its entirety.  These claims are without merit.

The BIA rejected Petitioners' appeal of the Immigration Judge's decision to deny asylum because it was not timely filed.  As noted above, Petitioners could have appealed that decision to the Sixth Circuit, but chose not to.  Thus, the loss of Petitioners' right to appeal the denial of their request for asylum does not constitute a denial of due process.

Likewise, Petitioners' claim that the Immigration Judge and BIA violated their due process rights by failing to consider their motion to reopen in its entirety is unpersuasive.  It is true that the Immigration Judge's opinion did not directly address Petitioners' ineffective assistance of counsel claim.  However, Petitioners' claim that we "do not know the reasons the Immigration Judge denied

10

the motion to reopen" is incorrect. The Immigration Judge based her decision on the record showing that her earlier decision had been mailed to Petitioners' attorney.

The terseness of the Immigration Judge's order would be inappropriate were it deciding Petitioners' initial request for asylum. However, that issue had already been determined in a fourteen page opinion issued by the Immigration Judge. The limited issue before the Immigration Judge in the order in question was whether there were sufficient grounds to reopen the case. As discussed above, although the motion to reopen was ostensibly based on ineffective assistance of counsel, the affidavit supporting the motion argued that the initial appeal was timely. That argument was addressed by the Immigration Judge in her order.

Petitioners' argument that the BIA's summary affirmation violated due process is without merit. The BIA issued the summary affirmation pursuant to the streamlined procedures established in 8 C.F.R. § 1003.1(3)(4). This Court has repeatedly held that summary affirmations do not violate due process. *See Tchokothe v. Ashcroft*, 111 Fed. Appx. 421, 422 (6th Cir. 2004) ("However, our court has upheld the BIA's streamlined appeals procedure against both administrative law and due process challenges, even when it affirms an [Immigration Judge] 'without opinion.'") (citing *Denko v. INS*, 351 F.3d 717, 727-30 (6th Cir. 2003)).

### III.  CONCLUSION

For the foregoing reasons, we **DENY** the Petition for Review.

11