**NOT RECOMMENDED FOR PUBLICATION**

File Name: 06a0264n.06

Filed: April 14, 2006

**Nos. 04-3794, 04-4115**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MAME M. SENE, | ) | |
| | ) | |
| Petitioner, | ) | REVISED |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, ATTORNEY | ) | |
| GENERAL OF THE UNITED STATES, | ) | |
| | ) | |
| Respondent. | ) | |

Before: SILER and CLAY, Circuit Judges; Carr, District Judge.[*]

**SILER**, Circuit Judge. In this consolidated review, Mame Sene petitions for review of two orders of the Board of Immigration Appeals ("BIA"). Sene argues the BIA erred in these rulings by not giving credence to her ineffective assistance of counsel claim and not recognizing the dispositive nature of the evidence she now seeks to present. Sene also claims that she was denied a full and fair hearing by the Immigration Judge ("IJ"). The petitions are DISMISSED.

**BACKGROUND**

Sene, a native and citizen of Senegal, submitted an application for asylum in early 2001 and, upon its denial, the Immigration and Naturalization Service instituted removal proceedings. The crux of her asylum claim was that, as a member of a minority political group, she has been

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

persecuted by the Senagalese government. Ultimately, the IJ denied Sene's application for asylum, denied her relief under the Convention Against Torture, and ordered her removed to Senegal. Sene, through counsel, filed a timely appeal of the IJ's decision, but the BIA summarily affirmed the IJ without opinion.

Later, Sene filed a *pro se* motion to reopen in April 2004. Along with this motion, she submitted two pieces of new evidence: (1) a psychological evaluation and (2) background information on a ferry disaster in Senegal to explain her mother's absence. Also, she noted that she would soon be undergoing a medical examination relating to her female genital mutilation (FGM) claim. The BIA denied the motion to reopen. This decision of the BIA is before us in No. 04-3794.

In June 2004, Sene, through new counsel, filed a second motion to reopen and, in the alternative, a motion to reconsider, seeking a remand of her case for new fact finding. She sought to present "new and material evidence" unavailable previously due to the ineffective assistance of her former counsel. The BIA denied the motion to reconsider as untimely under 8 C.F.R. § 1003.2(b). It denied her motion to reopen as numerically barred under 8 C.F.R. § 1003.2(c)(2) and on the basis that none of the proffered evidence was previously unavailable. With regard to the ineffective assistance claim, the BIA ruled that Sene failed to establish that her former counsel's actions had prejudiced her case. These decisions are before us in No. 04-4115.

## DISCUSSION

### 1. First Motion to Reopen

Sene's first motion to reopen was supported by three "new" pieces of evidence: (1) a psychological report, (2) background information on a ferry disaster to explain her mother's absence

- 2 -

at the original hearing, and (3) a letter indicating that Sene would see a gynecologist to document

her FGM claim.  After review, the BIA denied the motion to reopen on the grounds that none of the

proffered evidence was previously unavailable as required under 8 C.F.R. § 1003.2(c)(1).

> In a given case the Board . . . may determine, as a sufficient ground for denying a motion to
>
> reopen, whether the alien has produced previously unavailable, material evidence . . . .
>
> These decisions are subject to an abuse of discretion standard of review, and in determining
>
> whether the Board abused its discretion, this Court must decide whether the denial of the
>
> motion to reopen was made without a rational explanation, inexplicably departed from
>
> established policies, or rested on an impermissible basis such as invidious discrimination
>
> against a particular race or group.

*Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (internal quotations and citation omitted).

Where "the material was available and the Board provided a reasoned explanation," there is no

abuse of discretion.  *Id.* at 676.  In this case, the evidence was clearly previously available since it

dealt exclusively with events that occurred and were known about prior to the original hearing.

Also, the BIA provided a reasoned explanation as to why it was denying the motion.  Therefore, it

did not abuse its discretion.

**2.  Second Motion to Reopen and Motion to Reconsider**

**(a) Ineffective Assistance of Counsel Claim**

On this second appeal, Sene's arguments primarily revolve around the claim that her counsel

was ineffective due to insufficient client contact, inadequate preparation, failure to attend hearings,

and inadequacy in making legal arguments. After consideration, the BIA ruled that Sene "failed to sufficiently establish that her former counsel's actions resulted in prejudice to her case."

Fifth Amendment guarantees of due process extend to aliens in deportation proceedings. *Hamid v. Ashcroft*, 336 F.3d 465, 468 (6th Cir. 2003) (internal quotations and citation omitted). "Ineffective assistance of counsel in a deportation proceeding will rise to the level of a due-process violation under the Fifth Amendment 'only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Denko v. I.N.S.*, 351 F.3d 717, 723 (6th Cir. 2003) (citations omitted). "To constitute fundamental unfairness, however, a defect in the removal proceedings must have been such as might have led to denial of justice." *Allabani*, 402 F.3d at 676 (internal quotations and citation omitted). Ultimately, the alien carries the burden and must show not simply "mere ineffective assistance of counsel, but assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing." *Denko*, 351 F.3d at 724 (internal quotations, alterations, and citations omitted). Although we generally review the Board's denial of a motion for reopen for abuse of discretion, a claim of ineffective assistance of counsel is reviewed *de novo*. *Allabani*, 402 F.3d at 676 (citations omitted).

Since Sene has satisfied the preliminary requirements for an ineffective assistance claim, *see Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1998), we review the merits of that claim. Beginning with the issue of prejudice, Sene must show that the evidence she now seeks to present would have changed the outcome of the proceedings before the IJ and Board. *See Allabani*, 402 F.3d at 678 ("Since we are unable to find that the respondent is prima facie eligible for a grant of asylum . . . we cannot conclude that the respondent suffered prejudice by the representation of his former

attorney"). On this point, Sene primarily points to the comments of the IJ indicating that a medical report on the extent of her injuries "would have been virtually dispositive in the case." However, the IJ made clear that the medical report was dispositive in his mind because he believed that any medical professional would be able to determine approximately when her injuries occurred and, moreover, that such a professional could determine the manner in which the circumcision was done. In other words, the IJ believed such a report could determine whether scars existed to show her injuries were "crudely done" by a "completely untrained and uncaring individual." A review of the medical report of Dr. Dyson in the record reveals no such information. The only information Dr. Dyson was able to confirm was that Sene had indeed been circumcised. Importantly, Dr. Dyson states that the "external genitalia is totally healed without evidence of scarring." Given the limited nature of Dr. Dyson's report, it is far from clear that this information would have changed the outcome of Sene's asylum proceedings. Nonetheless, if the information in Dr. Dyson's report had been coupled with the psychological evaluation and the asylum application of her mother, both of which corroborated her claims, there is a strong likelihood that the outcome of the proceedings would have been different.

Along with showing prejudice, an individual alleging ineffective assistance must also show that any prejudice to her case was a result of the incompetence of her counsel. *See Denko*, 351 F.3d at 724. In other words, a claimant must prove deficient performance by counsel. Moreover, showing deficient performance alone is insufficient; rather, the party claiming ineffective assistance must show performance so deficient as to have impinged upon the fundamental fairness of the hearing. *Id.* Sene's primary allegations of incompetence concern her former counsel's failure to

present certain corroborative evidence, including her mother's asylum application and a medical report documenting her injuries. As this court has noted, where it is reasonable to expect corroborative evidence, such evidence should be provided. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004). Sene's former counsel attempted to obtain information relating to both Sene's physical injuries and her mother's asylum hearing. In an affidavit, Sene admits that her former counsel advised her "to bring my mother to testify at the final hearing" and later stated that it "would be easier to win" the case with that testimony. However, "sometime before the final hearing," Sene informed her former counsel that her mother would be unable to attend. Regarding the medical evidence, former counsel asked Sene to "get a medical report" from her doctor at Bellevue and, after that report turned out to be unsatisfactory, former counsel escorted Sene to a medical office in order to set up an appointment. Ultimately, Sene stated that she could not afford such an examination and no appointment was made.

We do not dispute Sene's contentions that her former counsel could have taken greater care in the preparation of her case. For example, former counsel's attempt to obtain medical evidence concerning the extent of Sene's injuries occurred only after the IJ stressed the importance of such information. Clearly, an attempt to obtain that evidence should have occurred at an earlier. Further, better communication between client and attorney was much needed. Despite this, though, former counsel's performance was not so ineffective as to have impinged upon the fundamental fairness of the hearing. Sene's former counsel did (1) attempt to garner medical evidence for the case, (2) stress the importance of Sene's mother's testimony, (3) present other evidence corroborating Sene's claims, including extensive reports on the conditions in Senegal and a confirmation of Sene's

mother's asylum approval, (4) file a well-supported brief to the Board appealing the decision of the IJ. Overall, Sene's former counsel's actions cannot be deemed ineffective assistance.

**(b) Denial of Second Motion to Reopen and Motion to Reconsider**

"The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board . . . . The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). The denial of a motion to reopen or reconsider is reviewed for an abuse of discretion. *Denko*, 351 F.3d at 723. An abuse of discretion can be shown when the BIA "offers no 'rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (citing *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

Sene first argues that her case should be reopened to allow her to introduce two new pieces of evidence: a medical exam documenting the extent of her injuries and her mother's asylum application. Recognizing the numerical limitation, she requests the court equitably toll that provision. The BIA, without mentioning equitable tolling, ruled that the motion was barred under 8 C.F.R. § 1003.2(c)(2), that it did not fall within any of the exceptions to that provision, and, in any event, the new evidence proffered was not previously unavailable.

First, with regard to the numerical limitation, "a party may file only one motion to reopen deportation or exclusion proceedings." 8 C.F.R. § 1003.2(c)(2). There are four exceptions to this requirement, but Sene does not argue for, nor does she qualify for, any of them. *See* 8 C.F.R. § 1003.2(c)(3). Moreover, this court has never held that equitable tolling applies to numerical

limitations on motions to reopen.[1]  Second, evidence offered on a motion to reopen must have been unavailable at the previous hearing.  8 C.F.R. § 1003.2(c)(1).  Since this is undoubtedly Sene's second motion to reopen and the proffered evidence was previously available, the BIA's decision cannot be deemed an abuse of discretion.

Alternatively, Sene argues this should be considered a motion to reconsider the BIA's denial of her first motion to reopen.  Here, the BIA denied the motion to reconsider as untimely under 8 C.F.R. § 1003.2(b)(2).  Under § 1003.2(b)(2), a "motion to reconsider a decision must be filed with the BIA within 30 days after the mailing of the Board decision."  In the case at bar, the denial of the first motion to reopen was mailed on May 18, 2004, and the motion to reconsider was filed on June 21, 2004.  This is clearly outside of the time limitation.  Accordingly, the BIA's decision was rational and based upon established policies and, therefore, was not an abuse of discretion.

## 3.  Denial of Full and Fair Hearing by the Immigration Judge Claim

In her brief to this court, Sene also claims that the IJ denied her a "full and fair hearing."  On January 6, 2003, the IJ denied Sene's application for asylum.  Immediately, Sene appealed that decision to the BIA and it affirmed, without opinion, the decision of the IJ on March 23, 2004.  However, Sene did not petition this court for judicial review of that decision; instead, she chose to file a motion to reopen on April 21, 2004.  The failure to appeal is important because the statute

---

[1]Even assuming equitable tolling of numerical limitations is the law of this circuit, there must be some reason for equitable tolling to apply.  Sene argues that the ineffective assistance of her counsel justifies equitable tolling; however, as discussed above, the ineffective assistance claim is not meritorious.  Therefore, in the absence of other arguments, she has no valid ground on which to request equitable tolling.  *See Hermiz v. I.N.S.*, 86 Fed. Appx. 44, 45 (6th Cir. 2003).

providing for judicial review of the removal decision states that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). "That statutory time limit is both mandatory and jurisdictional." *Prekaj v. I.N.S.*, 384 F.3d 265, 267 (6th Cir. 2004) (internal quotations and citation omitted). Since Sene did not seek judicial review of that decision within thirty days of its issuance, "the court lacks jurisdiction to consider Petitioner['s] objections to that decision." *Id.* at 268.

PETITIONS DISMISSED.

**CLAY, Circuit Judge, dissenting.** The record in this case compels the conclusion that Petitioner received ineffective assistance of counsel in violation of the Due Process Clause of the Fifth Amendment. Counsel's egregious neglect of Petitioner's undeniably meritorious case resulted in the rejection of Petitioner's application for asylum and should leave this Court with little choice but to grant the petition for review and reverse the order of the BIA denying Petitioner's motion to reopen. Only by mischaracterizing the record on appeal does the majority reach the opposite conclusion. Therefore, I must dissent.

## I.
## BACKGROUND

Petitioner, Mame Sene, a citizen of Senegal, seeks asylum in the United States from persecution she has suffered on the basis of her race and political opinion. Petitioner comes from Ziguinchor, Senegal, and is a member of the Diola ethnic group. The Diola are associated with the Movement of Democratic Forces in the Casamance ("MFDC"), a rebel group centered in Ziguinchor and the surrounding Casamance region. According to both the United States Department of State and Amnesty International, Senegalese security forces regularly torture civilians suspected of sympathizing with the MFDC.

On February 8, 1999, Senegalese security forces kidnaped and tortured Petitioner. Approximately ten soldiers grabbed her off the street and forced her into a jeep at gun point. After confirming that Petitioner was Diola in origin, the soldiers drove her to an agricultural school outside of the city and placed her in a small room. There, the soldiers gang-raped her and then mutilated her genitalia, completely excising her labia minora and partially excising her labia

majora.[2] Two weeks later, the soldiers transferred Petitioner to a civil jail in Ziguinchor, where she remained for six months without being charged with any crime. Petitioner has been in therapy at New York University School of Medicine's Program for Survivors of Torture ("NYU Torture Program") since February of 2001, in order to deal with the resulting Post-Traumatic Stress Disorder and depression.

In February 2000, Petitioner and her mother arrived in the United States. One year later both Petitioner and her mother filed applications for asylum. INS granted Petitioner's mother's application but referred Petitioner's application to an Immigration Judge ("IJ") for a hearing. Petitioner retained New York attorney, Ronald Solomon, to represent her at the hearing.

Mr. Solomon ignored Petitioner's case. He requested continuances on two occasions for reasons not related to Petitioner's case. On the second occasion, the IJ denied Mr. Solomon's request for a continuance. Nevertheless, Mr. Solomon failed to appear at Petitioner's hearing, and the IJ was forced to grant Petitioner an additional three month continuance. The IJ warned

---

[2]"The Department of State has classified, based on World Health organization typology, the prevalent forms of female genital mutilation. Type I, commonly referred to as 'clioridectomy,' is the removal 'of the clitoral hood with or without removal of all or part of the clitoris.' Type II, commonly referred to as 'excision,' is the removal 'of the clitoris together with part or all of the labia minora.' Type III, commonly referred to 'infibulation,' is the removal 'of part or all of the external genitalia (clitoris, labia minora and labia majora) and stitching or narrowing of the vaginal opening, leaving a very small opening, about the size of a matchstick, to allow for the flow of urine and menstrual blood.'" *Abay v. Ashcroft*, 368 F.3d 634, 638 n.1 (2005) (quoting *Prevalence of the Practice of Female Genital Mutilation (FGM); Laws Prohibiting FGM and Their Enforcement; Recommendations on How to Best Work to Eliminate FGM,* U.S. Dep't of State, Report on Female Genital Mutilation, at 5 (updated 27, 2001), available at http://www.state.gov/g/wi/rls/rep/c6466.htm. Petitioner seems to have suffered a version of FGM between Type II and III.

Petitioner that she would not receive any more continuances and advised her that she should consider seeking new counsel.

Between May 18, 2001, the date Petitioner hired Mr. Solomon, and January 6, 2003, the date of Petitioner's hearing before the IJ, Mr. Solomon had exactly one conversation with Petitioner about the merits of her case. The conversation was initiated by Petitioner, who called Mr. Solomon after he missed her scheduled hearing. Mr. Solomon assured Petitioner that he would be at her hearing on January 6, 2003 and that Petitioner should bring her mother to testify. Petitioner informed Mr. Solomon that her mother was going to be out of the country because of a ferry boat accident in Gambia that had killed several family members. Mr. Solomon did not instruct Petitioner to obtain an affidavit, or document of any sort, from her mother regarding her mother's need to absent herself from the country. Similarly, he did not instruct Petitioner to obtain any medical documentation, despite his knowledge that she was seeking therapy and other medical services from the NYU Torture Program.

On January 6, 2003, the IJ conducted a hearing on the merits of Petitioner's asylum claim. The only evidence presented on Petitioner's behalf was her own testimony and country condition reports. Based in part on lack of corroborating evidence, in particular medical evidence and the testimony of Petitioner's mother, the IJ denied Petitioner's requests for asylum and withholding of removal. He refused to continue the case but recommended that Petitioner obtain medical evidence and move to reopen.

Mr. Solomon continued to represent Petitioner after the IJ denied her claim. He appealed the IJ's decision to the BIA and, after the BIA denied the direct appeal, assured Petitioner that he

would help her file a motion to reopen her case. He asked Petitioner to obtain a doctor's report documenting her genital mutilation. Petitioner obtained a report authored by Dr. Dyson for Mr. Solomon, but Mr. Solomon determined that the report was inadequate. Thereafter, Mr. Solomon attempted to arrange an appointment for Petitioner with another doctor. Petitioner, however, could not afford to see the doctor and suggested that she again see Dr. Dyson. Mr. Solomon then informed her that the first report from Dr. Dyson would suffice.

For reasons unclear from the record, Mr. Solomon withdrew from Petitioner's representation sometime after March 23, 2003, the date on which the BIA denied Petitioner's direct appeal. When Petitioner learned that Mr. Solomon had not filed a motion to reopen, she was forced to rely on a legal liaison at the NYU torture center, Mr. Wilkinson, for help with her *pro se* motion. According to Petitioner, Mr. Wilkinson incorrectly advised her that new evidence was proper legal grounds for a motion to reopen and that she had until April 23, 2004 to file such a motion. After obtaining a psychologist's report corroborating her allegations of past torture, news articles on the ferry accident in Gambia, and a letter from Social Services confirming a gynecologist's appointment, Petitioner filed a *pro se* motion to reopen on April 20, 2004. Not surprisingly, the BIA denied Petitioner's *pro se* motion, holding that none of the evidence Petitioner submitted with the motion was previously unavailable, and thus Petitioner's new evidence was not a proper basis for a motion to reopen.

Petitioner then obtained new counsel and filed a second motion to reopen. In her second motion, Petitioner alleged that the BIA should reopen her case due to Mr. Solomon's ineffective assistance of counsel. Additionally, Petitioner submitted further documentation corroborating her allegations of past persecution, including a doctor's report stating that an examination of Petitioner

revealed that she suffered female genital mutilation and a second, in-depth, psychologist's report.

Nonetheless, the BIA denied Petitioner's second motion on the grounds that it was number-barred

as the regulations grant each asylum applicant only one motion to reopen and Petitioner failed to

present evidence that was previously unavailable. Additionally, the BIA determined that Petitioner

had failed to demonstrate that she received ineffective assistance of counsel in violation of the Due

Process Clause of the Fifth Amendment.

Petitioner now appeals: (1) the IJ's denial of her asylum claim; (2) the BIA's denial of her

first motion to reopen; and (3) the BIA's denial of her second motion to reopen. I would grant the

requested relief because the BIA abused its discretion in denying Petitioner's second motion to

reopen when it erroneously held that the motion was number-barred and that Petitioner had not

received ineffective assistance of counsel.

## II.
## DISCUSSION

Because Petitioner received ineffective assistance of counsel at her merits hearing, the

Fifth Amendment requires the BIA to grant Petitioner a new merits hearing. Contrary to the

majority's opinion, in such cases neither the requirement that evidence be previously unavailable

contained in 8 C.F.R. § 1003.2(c)(1) nor the number-bar contained in § 1003.2(c)(2) precludes

Petitioner from obtaining relief. Petitioner's evidence was previously unavailable due to her

counsel's ineffective assistance. Moreover, both this Court and the BIA have the power to waive

the number bar contained in § 1003.2(c)(2) in exceptional circumstances. Where counsel's

misrepresentations have caused a petitioner to waste his or her motion to reopen despite the

existence of a meritorious claim, the BIA abuses its discretion in declining to waive the number-bar.

## A. Petitioner Received Ineffective Assistance of Counsel

### 1. Standard of Review

This Court reviews the BIA's denial of an ineffective assistance of counsel claim *de novo*. *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005).

### 2. Due Process Clause of the Fifth Amendment

Counsel is ineffective in violation of the Due Process Clause of the Fifth Amendment where counsel's errors result in a proceeding that is so fundamentally unfair that the alien was reasonably prevented from presenting his or her case. *Denko v. I.N.S.,* 351 F.3d 717, 724 (6th Cir. 2003). To show fundamental unfairness, a party must demonstrate that: (1) counsel erred, or competent counsel would have acted otherwise; and (2) but for counsel's errors the party would have received asylum. *Denko,* 351 F.3d at 724.

#### a. Attorney Error

It is clear that Mr. Solomon's failure to submit medical reports was an error. The BIA has stated in numerous cases that an applicant's failure to provide corroborative evidence of torture, where reasonably available, is fatal to an asylum claim. *Matter of M-D*, 21 I. & N. Dec. 1180, 1181 (BIA 1998); *Matter of S-M-J*, 21 I. & N. Dec. 724, 725 (BIA 1997); *see also Dorosh v. Aschroft*, 398 F.3d 379, 382 (6th Cir. 2004) (upholding the BIA's rule requiring corroborating evidence). In particular, the BIA has stated that an applicant should provide documentary support for material facts which are central to [the applicant's] claim and easily subject to

verification, such as . . . *documentation of medical treatment*." *Matter of S-M-J*, 21 I. & N.

Dec. at 725 (emphasis added). As an immigration attorney, Petitioner's attorney had an

obligation to be aware of this well-known rule. Additionally, had Petitioner's attorney taken the

time to speak with her, he would have realized that Petitioner was receiving medical treatment

and could easily obtain a report. Thus, Petitioner's attorney erred in failing to obtain medical

reports from Petitioner and submit them to the IJ.

### b. Prejudice

Similarly, it is clear that the attorney's failure to submit medical reports prejudiced

Petitioner's case. According to the IJ at Petitioner's hearing, "[t]his case could be pretty simple

if a doctor confirmed what she said. " (J.A. at 191.) Dr. Deborah Dyson did confirm a

substantial amount of what Petitioner claimed. Dr. Dyson confirmed that Petitioner's genitalia

had been mutilated. "Her physical exam reveals the absence of the clitoris and prepuce, total

excision of the labia minora and partial excision of the labia mojora [sic]." (J.A. at 93.)

Additionally, Petitioner's psychologist, Adeyinka M. Akinsulure-Smith, wrote "in my clinical

and professional opinion, [Petitioner] displays significant symptoms associated with Depression

and Post-Traumatic Stress Disorder. These findings are consistent with the severe physical and

emotional trauma that she reports experiencing in the past." (J.A. at 109.) Thus, it is clear that

with advice from counsel, Petitioner could have won her asylum claim on the merits. *Abay v.*

*Ashcroft*, 368 F.3d 634 (6th Cir. 2004) (holding that female genital mutilation is a form of

persecution).

The majority attempts to undercut the force of Petitioner's new evidence by relying on the IJ's statements that he believed a medical report was necessary to show that Petitioner's injuries were "crudely done" by a "completely untrained and uncaring person," thereby implying that the IJ would have denied Petitioner's asylum claim even with the new evidence. Although I find it unlikely that the IJ would have denied Petitioner's claim, I find it important to make clear that the proper inquiry on prejudice is not whether the IJ would have denied Petitioner's claim but whether Petitioner was legally entitled to relief on her claim. In this case, had the IJ denied Petitioner's claim on the merits even after considering Petitioner's new evidence, the BIA and this Court would have been legally obligated to reverse the IJ's decision. First, the IJ does not have the authority to require a petitioner to submit corroborating evidence unless such evidence is reasonably available. *See Dorosh,* 398 F.3d 379 at 382. As Dr. Dyson's report makes clear, such evidence is not reasonably available because the events in question occurred too long ago. Second, the IJ is not a medical expert and does not have the knowledge or authority to assume that because there was no scarring that a surgeon, and not soldiers, mutilated Petitioner's genitalia. *See Sylla v. I.N.S.*, 388 F.3d 924, 928 (6th Cir. 2004) (holding that the IJ could not speculate on typical prison conditions in Guiana but needed to base his credibility determinations on evidence in the actual record); *see also Sulollari v. Gonzales*, No. 04-4237, 2005 WL 3275500, *4 (6th Cir. Dec. 5, 2005) (citing *Sylla*, 388 F.3d at 928). If the IJ made an adverse credibility determination on either basis, both the BIA and this Court would be required to reverse the IJ's decision. *Sylla*, 388 F.3d at 928.

Furthermore, the majority inappropriately and offensively implies that Petitioner somehow did not suffer persecution because her genitalia healed without scarring. Maj. Op. ("Importantly, Dr. Dyson states that the 'external genitalia is totally healed without scarring.") Female genital mutilation constitutes persecution in this Circuit regardless of whether performed by a surgeon or a soldier. *See Abay v. Ashcroft*, 368 F.3d at 634. Despite the fact that Petitioner has no scars, she may never be engage in satisfactory intercourse and is at risk for serious and potentially life threatening complications. *See id*. at 638. Excising a woman's sex organs is a form degradation that is unacceptable in this country. *See id.* at 638-39 ("The practice of FGM has been internationally recognized as a violation of women's and females children's rights. . . . Congress criminalized the practice of female genital mutilation under federal law.") (internal citations omitted). Because Petitioner has undeniably suffered a severe form of persecution and there is absolutely no evidence in the record suggesting that she consented to the persecution, Petitioner has met the burden of proving a well-founded fear of future persecution and would prevail on the merits of her asylum claim. *Id.* (holding that evidence of past persecution entitles a petitioner to a presumption of a well-founded fear of persecution and refugee status).

Nonetheless, the majority manages to conclude that Petitioner has not established ineffective assistance of counsel. While conceding that the failure to submit documents to the IJ created a "strong likelihood" of prejudice to Petitioner's case, the majority reasons that Mr. Solomon did not cause this prejudice. In its efforts to support its reasoning, however, the majority is forced to obscure the facts in the record. According to the majority's version of events, Mr. Solomon did not cause the prejudice Petitioner suffered because Mr. Solomon

- 18 -

recommended to Petitioner that she submit medical documents. The majority, however, misleadingly omits the fact that Mr. Solomon made this recommendation *after* the IJ denied Petitioner's asylum application on the merits, stating only that Mr. Solomon made the recommendation "after the IJ stressed the importance of such information." (Maj. Op. Sec. 2.a.) By this time, however, Petitioner had already suffered the requisite prejudice because her claim had been denied on the merits. Mr. Solomon's advice could not remedy the prejudice she suffered from the denial. A direct appeal, as the record demonstrates, is useless where Petitioner does not submit corroborating evidence to the IJ. In such cases the IJ is legally justified in rejecting a Petitioner's claim, and the BIA has every right to affirm the IJ's decision. Thus, a motion to reopen was Petitioner's only alternative and that is the motion before us today.

**B.     The BIA Abused Its Discretion in Denying Petitioner's Motion to Reopen**

**1.     Standard of Review**

This Court reviews a BIA's denial of a motion to reopen for abuse of discretion. *Daneshvar v. Ashcroft*, 355 F.3d 615 (6th Cir. 2004) (citing *I.N.S. v. Abudu*, 485 U.S. 94, 96 (1988)). An abuse of discretion occurs when the BIA exercises its discretion in a way that is arbitrary, irrational, or contrary to law. *Id.* (citation omitted).

**2.     The BIA Abused Its Discretion in Holding That Petitioner's Evidence Was Previously Unavailable**

The BIA abused its discretion in holding that §1003.2(c)(1) barred Petitioner's motion to reopen because Petitioner failed to present any previously unavailable evidence in support of her motion. Section 1003.2(c)(1) prohibits the BIA from granting a motion to reopen "unless it

- 19 -

appears . . . that the evidence sought to be offered is material and was not available and could not

have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Where a

petitioner receives ineffective assistance of counsel, such assistance is deemed to have rendered

the petitioner's evidence previously unavailable within the meaning of § 1003.2(c)(1). *See*

*Orehhova v. Gonzales*, 417 F.3d 48, 52 (1st Cir. 2005). Counsel's incompetent performance

effectively results in a petitioner's inability to obtain and or present relevant evidence. Perhaps

for this very reason, the BIA does not apply § 1003.2(c)(1)'s previously unavailable evidence

requirement to apply to ineffective assistance of counsel claims. *See Osei v. I.N.S.*, 305 F.3d

1205, 1208-09 (10th Cir. 2002) (noting that the BIA does not apply § 1003.2(c)(1) to motions to

reopen based on ineffective assistance of counsel claims) .

Moreover, reading § 1003.2(c)(1)'s previously unavailable evidence requirement to bar

motions to reopen based on ineffective assistance of counsel claims would render § 1003.2(c)(1)

unconstitutional. The Due Process Clause of the Fifth Amendment grants aliens the right to a

full and fair hearing in deportation proceedings. *Denko*, 351 F.3d at 724. Where a petitioner is

deprived of a full and fair hearing due to ineffective assistance of counsel, the Fifth Amendment

mandates that the petitioner be granted a new hearing. *Id.* Where the federal Constitution

requires that a petitioner be afforded a new hearing, an administrative regulation cannot be used

to deny the petitioner that hearing. Any regulation that so conflicts with the Constitution is

unconstitutional and unenforceable. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177

(1803)("Certainly all those who have framed written constitutions contemplate them as forming

the fundamental and paramount law of the nation, and consequently the theory of every such

government must be, that an act of the legislature, repugnant to the constitution, is void."). Administrative regulations do not trump the Constitution, rather the Constitution trumps administrative regulations. Thus, the BIA's determination that Petitioner failed to present previously unavailable evidence is contrary to law and an abuse of discretion.

### 3. The BIA Abused Its Discretion in Failing to Waive the Number-Bar

Similarly, the BIA's failure to waive the number-bar as applied to Petitioner constitutes an abuse of discretion. Both the BIA and this Court have the authority to waive the number-bar on motions to reopen in exceptional circumstances.[3] *Rodrigues-Lariz v. I.N.S*, 282 F.3d 1218, 1224 (9th Cir. 2002). Equitable waiver should be granted where a petitioner has exceeded the number-bar in reasonable reliance on misrepresentations of legal counsel or other person purporting to give legal advice, and equity thus weighs in favor of granting the petitioner another opportunity to file. *See id.* Where "an individual purporting to provide legal representation" has wasted a petitioner's only opportunity to file a motion to reopen "by 'filing a worthless motion to reopen,'" the petitioner is considered to have exceeded the number-bar in reliance on a misrepresentation and is entitled to equitable waiver. *Id.*

In this case, Petitioner exceeded the number bar in reliance on Mr. Wilkinson's misrepresentations. Mr. Wilkinson incorrectly led Petitioner to believe that newly obtained evidence was a basis for a motion to reopen. If Mr. Wilkinson was going to give legal advice, he

---

[3]The majority states that equitable waiver is not available in this jurisdiction because this Circuit has not expressly held that it exists; that simply makes equitable waiver under these circumstances an issue of first impression in this Circuit, not improper.

should have informed himself on the relevant law thus enabling him to inform Petitioner that new evidence, alone, is not a proper legal basis for a motion to reopen. New evidence must also be "previously unavailable" to form grounds for a motion to reopen under 8 C.F.R. § 1003.2(c)(1). Instead, Mr. Wilkinson recommended that Petitioner pursue relief solely on the basis of new evidence that was previously available. Petitioner wasted her first motion to reopen in reliance on Mr. Wilkinson's incorrect statements of law. Consequently, the BIA's failure to waive the number bar was contrary to law and an abuse of discretion.

## III.
## CONCLUSION

For the reasons set forth above, I would grant the petition for review and remand with instructions to the BIA to reopen Petitioner's asylum application.